Becknell *v.* Hosier.

Filed May 9, 1894.

------------◆------------

No. 996.

## BECKNELL *v.* HOSIER.

MALPRACTICE.—*Physician and Patient.*—*Evidence.*—*Waiver of Privilege.* —Where a patient sues his physician for alleged malpractice in the treatment of the patient's injury, the privilege existing between them is thereby waived as to all matters connected with the treatment of the injury, in which the physician participated.

SPECIAL FINDING.—*How Considered.*—*Facts in Issue Should be Found in Substance.*—A special verdict should be considered as a whole, and, when thus considered, the facts relied on should be found clearly, definitely, and plainly—not exactly as pleaded, but the substance of the issues should be proved.

SAME.—*How Construed.*—*Intendment.*—*Inferences.*—A special verdict

should be construed reasonably and fairly, giving no heed to infinitessimal defects and subtle and refined distinctions, and giving no aid by intendment or inferences other than those which necessarily follow.

From the Kosciusko Circuit Court.

*L. W. Royse, I. H. Hall, J. D. Osborne* and *A. S. Zook,* for appellant.

*H. S. Biggs* and *S. J. North,* for appellee.

GAVIN, J.—The appellee sued to recover damages for malpractice by appellant in failing to properly treat and set a dislocated hip.

The answer was a general denial.

There was a trial by jury, which returned a special verdict on which judgment was rendered in favor of appellee for $1,500.

Appellant's motion for judgment on the verdict and his motion for new trial constitute the basis of this appeal.

The appellant did not undertake, absolutely, to cure appellee, but he was bound, as his attending physician and surgeon, to possess and exercise the average degree of skill and care generally possessed and exercised by members of his profession practicing in such localities. *Gramm* v. *Boener,* 56 Ind. 497; *Kelsey* v. *Hay,* 84 Ind. 189.

The substance of the special verdict (except two paragraphs hereinafter set forth in full) is as follows:

On December 19, 1890, the appellee's right hip was injured by his being run over by a loaded wagon; appellant, a practicing surgeon, was called on the same day and undertook to treat the injury; after making a slight and insufficient examination, he concluded that the injury was a mere bruise, prescribed some liniments for it, went away and did not return until specially called

on December 29, 1890. At this time the hip was dislocated; the known and well marked symptoms of a dislocation were present, and the surgeon's attention was called to them, yet he made only a slight examination and still failed to discover the dislocation. On January 2d, however, appellant did discover the dislocation, and made an unsuccessful attempt to reduce it.

There is also a finding that the defendant neglected to use, in the treatment of appellee's said hurt, reasonable care and skill, such as was generally used by surgeons practicing in his locality, whereby appellee was damaged in the sum of $1,500.

It will be observed that there is no finding of the existence of a dislocation prior to December 29, 1890; neither is there any finding that the appellant could have discovered the dislocation by the most careful examination at any time before he did so learn, nor that he could have reduced the dislocation if he had been aware of its existence, except so far as this latter fact may be found by the fourth paragraph of the special verdict hereinafter set out.

There would clearly be no actionable negligence in failing to discover a dislocation, unless it really existed and its existence was ascertainable by the exercise of proper care and skill, nor in failing to reduce it unless it was susceptible of reduction by the exercise of such care and skill.

There are two additional findings which have not been set out above, from which appellee claims to supply whatever fact may be essential to his recovery and wanting in the remainder of the verdict.

These two paragraphs are as follows:

"4th. On January 4, 1891, the defendant again attended the plaintiff, and attempted to reduce said dislocation and did not reduce it, and neglected and failed to

provide and apply the necessary, usual, and proper band-ages and means to said hip to keep the same in place, which, by the use of reasonable care and skill, he could have done, by reason whereof said hip joint became, and is, useless and so remains, by reason whereof the plain-tiff is deprived of the use of his right leg, and will al-ways be a cripple.''

''5th. After said reduction of said dislocation and af-ter said hip became again dislocated, the use of reasona-ble care and skill in the examination of said hip would have discovered the same, the known symptoms thereof being marked and distinct, and the attention of the de-fendant being repeatedly called thereto, but he negli-gently failed to make a careful examination concerning the same for a period of about six weeks when it had become impossible to reduce said dislocation again, or if possible, only by inflicting upon the plaintiff extreme pain and suffering.''

A special verdict is to be considered, as is contended by appellee, not in detachments but as a whole. *Cleve-land, etc., R. W. Co.* v. *Closser*, 126 Ind. 348, but when thus considered, the facts relied on should be found clearly, definitely and plainly. It is not necessary that they should be found exactly as pleaded. It is sufficient if the substance of the issues be proved. *Puterbaugh* v. *Puterbaugh*, 131 Ind. 288.

A special verdict is not to be scrutinized and ex-amined as with a microscope to bring to light infinitessi-mal defects and subtle and refined distinctions so shadowy as to be practically unreal. It is to be construed reason-ably and fairly. *Branson* v. *Studabaker*, 133 Ind. 147, on p. 162. Keeping in mind, however, that it must contain within itself, without aid by intendment or in-ferences other than those which necessarily follow, all those essential facts which are required to authorize a

recovery by the party upon whom rests the burden of proof. *Gordon* v. *Stockdale,* 89 Ind. 240; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Noblesville Gas, etc., Co.* v. *Loehr,* 124 Ind. 79.

An examination of these paragraphs (the 4th and 5th), leaves us in doubt and uncertainty as to what was intended by the jury. Whether there was no reduction of the dislocation or a reduction, but a failure to provide and use proper appliances to keep the hip in place after the reduction, can not be definitely ascertained. Whether the loss of the use of the limb was caused by the failure to reduce, or by the failure to provide proper appliances to keep it reduced, can not be positively known from this verdict. We are left in doubt as to whether the jury meant to find that the reduction could have been accomplished by the use of proper care and skill, or that the hip could have been kept in place after a reduction by the use of proper care and skill.

These paragraphs of the verdict, confused, inconsistent and uncertain as to their proper interpretation, do not supply that which was wanting in the remainder of the verdict.

The general finding of negligence upon the part of appellant can not aid the verdict under the facts as found. *Cincinnati, etc., R. W. Co.* v. *Grames,* 136 Ind. 39.

Appellee's counsel endeavor to make the 4th and 5th paragraphs of the verdict available upon the theory that the jury evidently attempted to find something which they did not express, and that therefore parts of the verdict may be disregarded and held for naught, and that when this is done sufficient facts are well found. We do not believe the court can remove inconsistencies and uncertainties in a verdict in this way. To accede to this proposition would be to establish a dangerous precedent. It is the province of the jury to find the facts, and the duty of the court to determine the law upon the facts as

declared by the jury. The verdict is expected to be the deliberate expression of the views of the jury as to the facts. If these views have not been clearly and intelligently expressed so as to convey the meaning intended, the place for correction is in the trial court.

This court could not hope to do justice by groping in darkness after the unexpressed meaning of the jury. There may of course be cases where the context will supply clearly and indisputably some slight omission, but this is not of that character. It has been often held that where the answers to interrogatories to the jury are vague and indefinite, uncertain and contradictory, they can not be made the basis of a judgment. *Grand Rapids, etc., R. R. Co.* v. *McAnnally*, 98 Ind. 412; *Sanders* v. *Weelburg, Exx.*, 107 Ind. 266; *Dickey* v. *Shirk*, 128 Ind. 278.

We are unable to see why the same principle does not hold good in considering a special verdict.

There is evidence in this case tending to prove that after the appellant had treated the appellee for about two months, it being apparent that his treatment was not proving successful, he recommended that appellee should go to Indianapolis where the surgeons were better prepared and equipped to treat such cases; that appellant went with appellee to that city, and Dr. Marsee and others, assisted by appellant, made a careful examination of his condition, and advised him as to the proper course to be pursued. The appellant offered to prove by himself and Dr. Marsee what occurred at this examination, and the condition and nature of appellee's injury at this time. Objection was made upon the ground that these were confidential communications, and the evidence was rejected. Counsel for appellee seek to sustain the ruling upon this ground, and that the evidence offered was as to matters occurring entirely subsequent to the appel-

lant's treatment, of which complaint is made, and disconnected therewith.

The general rule is well settled in Indiana by statutory enactment and decisions of the courts, that a physician is not permitted to disclose confidential communications made to him by a patient, nor the result of observations or examinations made by him upon the person of his patient unless with the consent of the latter; or unless the privilege is waived by the patient. *Ætna Life Ins. Co.* v. *Deming, Admr.*, 123 Ind. 384; *Williams* v. *Johnson*, 112 Ind. 273; *Penn Mut. Life Ins. Co.* v. *Wiler*, 100 Ind. 92; R. S. 1894, section 505; R. S. 1881, section 497.

When the patient, however, sues the physician for alleged malpractice in the treatment of the injury, then the privilege is waived as to all matters connected with the treatment of this injury in which the physician participated. It would be most manifestly unfair to establish any other rule. This proposition is analogous to the ruling made where the client sues an attorney for malpractice. *Nave* v. *Baird*, 12 Ind. 318.

The principles asserted by the case of *Lane* v. *Boicourt*, 128 Ind. 420, contribute largely to lead us to this conclusion. Nor can it be successfully asserted that appellant should not go into this particular transaction because it was disconnected with the remainder of his treatment, and because appellee had not gone into it himself. According to appellant's theory of the case, as supported by some evidence at least, this examination and consultation with Dr. Marsee were but additional steps in the effort to accomplish what appellant had all the time been seeking, the cure of appellee. It was not permissible for appellee to select out certain portions of the treatment of appellant, or certain visits and examinations, and by detailing them, limit appellant's evidence to those particular occurrences.

It is our conclusion on this branch of the case that the appellant was entitled to prove, both by himself and Dr. Marsee, anything occurring on that examination in which appellant participated, which was pertinent to the issues involved in the cause.

Judgment reversed, with instructions to sustain appellant's motion for new trial.

Filed May 13, 1894.